# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CURTIS ASHCRAFT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-14-1074-R |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Curtis Ashcraft brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record.[1] The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

below, the undersigned recommends that the Commissioner's decision be reversed and remanded.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on February 5, 2009, initially alleging a disability onset date of August 15, 2008. R. 205-14, 250-52. Following denial of his application initially and on reconsideration, Plaintiff was granted and attended a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on May 27, 2010. R. 98-99, 100-01, 105-14, 123-30, 132-37. Upon Plaintiff's request for review, the SSA Appeals Council vacated the May 2010 decision and remanded the case to be heard before an ALJ. R. 119-22. Plaintiff attended a hearing before a different ALJ on April 23, 2013, and at the hearing amended his alleged disability onset date to December 1, 2009. R. 36-69, 40. The ALJ issued an unfavorable decision on May 22, 2013. R. 10-35. The SSA Appeals Council denied Plaintiff's request for review, making the May 22, 2013 unfavorable decision the final decision of the Commissioner. R. 1-5; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. R. 13; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that

Plaintiff had the severe impairments of "degenerative disc disease in spine, obesity, depression, and panic disorder without agoraphobia." R. 13-21; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21-23; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 23-27; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "light work," subject to the following additional limitations:

> lift/carry and push/pull 20 pounds occasionally, lift/carry and push/pull 10 pounds frequently; sit 6 hours out of an 8 hour workday; stand 6 hours out of an 8 hour workday; no climbing ladders, ropes or scaffolds; occasionally climb stairs and ramps; occasionally balance, kneel, crouch, crawl and stoop; frequently use left and right upper extremities to reach, handle, finger and feel; frequent operation of foot controls with left and right lower extremities; perform simple tasks with routine supervision; able to interact appropriately with supervisors and co-workers; and able to adapt to work situations.

R. 23-24; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 27-28; *see* 20 C.F.R. §§ 404.1565, .1568, 416.965, .968.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert regarding the degree of erosion to the unskilled light occupational base

caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as laundry folder, bench assembler, and cleaner, all of which offer jobs that exist in significant numbers in the national economy. R. 28; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 1, 2009, though the date of the decision. R. 29; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff's "key allegation" in this appeal is that he "cannot stand or walk for long periods of time." Pl.'s Br., Doc. No. 16, at 7. Plaintiff asserts three errors relative to this allegation: (1) the ALJ failed to properly consider the medical source opinions; (2) the ALJ failed to properly consider Plaintiff's credibility; and (3) the ALJ's RFC assessment is not supported by substantial evidence. Pl.'s Br. at 1.

*A. Medical Source Opinion*

Plaintiff asserts that the ALJ did not properly consider the opinion of Plaintiff's treating physician, Dwayne Roush, MD, that Plaintiff was limited to only occasional standing and walking. Pl.'s Br. at 4-7.

1. Procedure for evaluating a treating physician's opinion

Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2). The opinion of a treating physician must be given controlling weight if it is *both* well supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

5

Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. This determination should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ is also obligated to clearly state what weight is being given to a treating physician's opinion and the ALJ's reasons for the determination. *Watkins*, 350 F.3d at 1301. The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5). If an ALJ rejects a treating source opinion altogether, he or she "must then give specific,

legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

## 2. Dr. Roush's opinion

Dwayne Roush, MD, treated Plaintiff numerous times over approximately two years for a variety of issues, including chronic joint pain, high cholesterol, and depression. *See* R. 564, 667-78. On February 11, 2010, following an examination of Plaintiff, Dr. Roush completed a form titled Medical Source Opinion of Residual Functional Capacity. *See* R. 499 (labeled Exhibit 12F in the administrative record). Dr. Roush stated, among other opinions, that Plaintiff can stand or walk only occasionally, with that term defined as "2-3 hrs." total in an eight-hour day. R. 499.

## 3. The ALJ's evaluation of Dr. Roush's opinion

The ALJ recognized Dr. Roush as Plaintiff's treating physician and gave the following explanation of her evaluation of Dr. Roush's opinion: "Dr. Roush opined that [Plaintiff] could stand/walk occasionally; and that he had chronic muscular pain and frequent cramping along with generalized joint pain involving knees/ankles/arms. Dr. Roush's opinion is given no weight as it is not supported by the objective examinations in the record." R. 27; *see also* R. 15.

The ALJ clearly stated the weight she gave the opinion—none[2]—but, as for the required explanation of that decision, does not specify the "objective examinations" to

---

[2] The ALJ did not separately articulate her findings with respect to the first inquiry in the two-step procedure—whether Dr. Roush's opinion should be given controlling weight. Such findings, however, are implicit in the ALJ's statement that she gave Dr. Roush's opinion no weight. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015)

which she refers or how any such examinations undermine Dr. Roush's opinion to such a degree as to cause the ALJ to reject it altogether. This explanation is not "sufficiently specific to make clear to any subsequent reviewers" the ALJ's reasoning for rejecting Dr. Roush's opinion, and therefore the Commissioner's decision must be reversed. *See Watkins*, 350 F.3d at 1300.

The ALJ may have intended to indicate that there is medical evidence of record that *conflicts* with Dr. Roush's opinion that Plaintiff "could stand/walk occasionally." She did not, however, cite to any such evidence or explain any such conflicts in the written decision. Attempting to fill this gap, Defendant argues that Dr. Roush's opinion is "inconsistent" with x-rays of Plaintiff's spine that were taken in September 2012. Def.'s Br., Doc. No. 22, at 9. The ALJ, however, recites the x-rays in her summary of the medical evidence but does not state that they refute a limitation to occasional walking or standing or otherwise cite them as a ground for rejecting Dr. Roush's opinion. *See* R. 20, 27. In any event, these x-rays showed moderate degenerative disc disease in Plaintiff's cervical spine and mild to moderate diffuse degenerative disc disease in Plaintiff's lumbar spine. R. 679-80. No medical source of record opined that the x-ray results exclude a limitation to occasional walking or standing. On their face, such results support to some extent Plaintiff's allegations of pain and, while they do not establish a

---

(finding "any imaginable oversight" to be "clearly harmless" when ALJ did not expressly say he was not affording treating physicians' opinions controlling weight but explained that they were entitled to no weight because they were inconsistent with the medical records and there was substantial evidence to support that decision). *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection, is our guide.").

8

restriction to occasional walking and standing, the results are not inconsistent with that finding.

Alternatively, the ALJ may have intended to indicate that there is no medical evidence of record that *supports* Dr. Roush's opinion regarding Plaintiff's standing and walking limitations. But Dr. Roush's opinion is based on his own treatment and examination of Plaintiff and is consistent with two state agency physicians who examined Plaintiff. As noted, Dr. Roush examined Plaintiff on February 11, 2010, and determined that Plaintiff can stand or walk only occasionally, with that term defined as "2-3 hrs." total in an eight-hour day. R. 499. Three other physicians examined Plaintiff relevant to his ability to stand and walk. First, Sheila Newcomb, DO, examined Plaintiff on March 28, 2009—prior to the alleged onset date—and did not report any limitations on Plaintiff's ability to stand or walk. *See* R. 406-14. Second, Johnaqa Saidi, MD, a state agency physician, examined Plaintiff on February 27, 2012, and opined that Plaintiff only could stand for a total of two hours and walk for a total of two hours in an eight-hour work day. R. 642-47, 643. Finally, state agency physician S.A. Chaudry, MD, examined Plaintiff on July 30, 2012, and opined that Plaintiff only could stand for a total of one hour and walk for a total of one hour in an eight-hour workday. R. 655-61, 656. While the ALJ recites the reports of Drs. Newcomb, Saidi, and Chaudry in her summary of the medical evidence, she did not cite Dr. Newcomb's opinion as a ground for rejecting Dr. Roush's opinion or address the fact that Dr. Roush's opinion regarding Plaintiff's ability to stand and walk is consistent with those of Drs. Saidi and Chaudry. *See* R. 19-20, 26, 27; *see also Watkins*, 350 F.3d at 1301 (listing "consistency between the opinion and the

record as a whole" as one of the factors to be considered when evaluating a treating physician's opinion); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (same).

In light of this evidence, the ALJ's oblique reference to "objective examinations" is insufficient explanation of the decision to reject the opinion of Plaintiff's treating physician regarding Plaintiff's ability to stand and walk. *See* R. 27; *Watkins*, 350 F.3d at 1300-01; *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining that though "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Of note, Defendant presents two grounds to support the ALJ's rejection of Dr. Roush's opinion. First, Defendant argues that Dr. Roush's opinion was inconsistent with his own treatment notes from the day he issued the Medical Source Opinion. Def.'s Br. at 8; *see* R. 672. Acknowledging that the ALJ did not specifically cite the February 11, 2010 treatment notes as a basis for rejecting Dr. Roush's opinion, Defendant points out that the ALJ had referred to the notes earlier in her decision[3] and described them as indicating that Plaintiff's "extremities and neurologic examinations were [within normal limits]" and Plaintiff was "doing well." Def.'s Br. at 8 (citing R. 15, 672). The ALJ's

---

[3] In her evaluation of Plaintiff's severe impairments, the ALJ referenced the Medical Source Opinion completed by Dr. Roush and also summarized medical records from Plaintiff's office visits with Dr. Roush dated February 11, 2010; January 13, 2011; March 16, 2011; and May 2, 2011. *See* R. 15 (citing Ex. 21F). The record reflects that Plaintiff also saw Dr. Roush for office visits on May 14, 2009; June 4, 2009; and September 17, 2009. *See* R. 564, 667, 668, 673, 674-75. Additionally, the date of Plaintiff's last office visit with Dr. Roush was June 2, 2011, rather than May 2, 2011, as cited by the ALJ. *See* R. 15, 669.

10

discussion of the treatment notes, however, includes the statement, "[Plaintiff] had chronic joint pain and cramping complaints . . . [and] . . . stated that Mobic did not help as it makes him feel dizzy." *See* R. 15. Further, Dr. Roush's actual notes of February 11, 2010, state in full, "[Patient] doing well – [patient] has chronic joint pain with cramping – Mobic didn't help – Flexeril but this makes him feel dizzy – [patient] doesn't respond well to this." R. 672. Even if the ALJ intended to rely upon these treatment notes, they do not clearly undermine Dr. Roush's ultimate conclusion regarding Plaintiff's ability to stand and walk and, therefore, do not serve as substantial evidence supporting the assignment of no weight to Dr. Roush's opinion.

Second, Defendant asserts that "Dr. Roush's treatment notes suggest that the bases for his opinion that Plaintiff experienced 'chronic joint pain and cramping' were Plaintiff's subjective complaints—statements [that] the ALJ found not entirely credible—which Dr. Roush recorded that day." Def.'s Br. at 8. Aside from this ground not being cited by the ALJ, the conclusion that Dr. Roush's opinion about Plaintiff's ability to stand and walk was based only on subjective complaints is not apparent from Dr. Roush's report or his treatment notes. Absent such a qualification, the logical inference is that Dr. Roush based his opinion on his own treatment and examinations of Plaintiff and review of all the medical evidence before him.

"[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should [be] evaluated based solely on the

reasons stated in the decision."). For the reasons set forth above, the undersigned finds that the ALJ did not adhere to the proper legal standards in her review of Dr. Roush's opinion. Accordingly, the ALJ's decision must be reversed and remanded for further review. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If, however, the correct legal test in weighing evidence has not been applied, . . . such failure constitutes grounds for reversal.").

### B. Credibility Assessment

Plaintiff additionally argues that the Commissioner's decision should be reversed and remanded because the ALJ failed to properly analyze and assess Plaintiff's credibility. Pl.'s Br. at 1. The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). The ALJ is required to closely and affirmatively link her credibility findings to substantial evidence in the record and to include "specific reasons" for such findings. *See Wilson*, 602 F.3d at 1144; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); SSR 96-7p, 1996 WL 374186, at *4. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (internal quotation marks omitted).

Here, in assessing Plaintiff's credibility, the ALJ referenced the standards outlined above, addressed various factors, and ultimately concluded: "After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 26. Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility with respect to Plaintiff's claim that he could not "stand or walk for long periods of time." Pl.'s Br. at 7-9; *see also* Pl.'s Reply, Doc. No. 23, at 2. The undersigned agrees, finding the ALJ's analysis deficient in several respects relevant to this specific alleged limitation.

First, the ALJ cites certain self-reported activities by Plaintiff as contradicting Plaintiff's descriptions of his symptoms. *See* R. 21-22, 25. The cited activities appear to be derived from function reports preceding an August 18, 2009 report by Plaintiff to the SSA of an increase in arthritic pain. *See* R. 302-09; R. 310-17; R. 281-88, 292-98. Even if Plaintiff continued the activities after that date, it is not clear that such activities—driving, doing household chores, attending medical appointments, watching television, reading, helping do yard work, and shopping—and the limited frequency at which they were performed require standing or walking for more than two or three hours in a day. *See id.*

Second, the ALJ cites a lack of prescriptions for Lortab and Oxycodone, as well as the asserted fact that "[t]here is no evidence that [Plaintiff] has been prescribed medication for arthritis," as indicating that Plaintiff's pain is less than what he describes. R. 25, 26. This reasoning ignores that—as the ALJ noted in other sections of the decision—Plaintiff was repeatedly prescribed Mobic, Neurontin, Flexeril, and Meloxicam, which are medications that can be used to treat arthritis. *See* R. 15, 20; *see also* R. 284 (Mobic), 480-81 (Mobic), 564 (Mobic and Flexeril), 670 (Mobic and Neurontin), 671 (Mobic and Neurontin), 672 (Mobic and Flexeril), 673 (Mobic and Flexeril), 695 (Meloxicam), 707 (Flexeril), 709 (Flexeril).

Third, the ALJ cites an attempt made by Plaintiff to obtain employment as undermining the allegation that Plaintiff "could not work due to pain." R. 26. The referenced effort to find work, however, appears to have occurred prior to the August 18, 2009 report of an increase in Plaintiff's arthritic pain and, in any event, culminated in a job in April 2009 that Plaintiff stated he had to immediately discontinue due to "pain in [his] joints." R. 272; *see* R. 310-17, 253-59, 271-80; *see also* R. 49, 217 (employment record from Wal-Mart indicating Plaintiff was hired 4/6/09 and earned $116.00).

In light of the above, the factors cited by the ALJ as bases for her credibility assessment do not constitute substantial evidence in support of the ALJ's determination that Plaintiff's claims of physical pain were not entirely credible, at least insofar as Plaintiff's claim that he could not stand or walk for long periods of time. *See Thompson*, 987 F.2d at 1490 (refusing to "defer[] to the ALJ as trier of fact on credibility" when little was "left as 'substantial evidence' for the ALJ's determination of noncredibility"); *Talbot*

*v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987) (finding that ALJ had mischaracterized claimant's reports of activities, leaving only "a mere scintilla" of support, which that was insufficient to constitute substantial evidence).[4]

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by December 8, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

---

[4] Plaintiff's final argument is that the ALJ's RFC assessment is not supported by substantial evidence. *See* Pl.'s Br. at 1. Because the finding at issue "may be affected by the ALJ's treatment of this case on remand," the undersigned does not address Plaintiff's contention. *Watkins*, 350 F.3d at 1299

ENTERED this 17th day of November, 2015.

*Charles B. Goodwin*
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE